**In re Sara K. BERRY, Hebra A. Berry, a/k/a H. A. Berry, and Buddy Berry.**

**Bankruptcy No. 80–00606.**

United States Bankruptcy Court,
D. South Carolina.

Oct. 24, 1980.

On Motion For New Trial March 11, 1981.

---

Robert J. Thomas, Columbia, S. C., for debtors.

Ralph C. Robinson, Jr., Columbia, S. C., for creditor Republic Nat. Bank.

Charles E. Baker, Columbia, S. C., for creditor Dallas D. Ball, P. A.

J. BRATTON DAVIS, Bankruptcy Judge.

This matter came on before the Court after due notice on October 21, 1980 at 10:15 o'clock, for hearing on two Objections to the debtor's claim for property exemption filed October 3, 1980.

The objections of Dallas D. Ball, P.A., and Republic National Bank both pertain to the exemptions claimed on the Debtor's Claim for Property Exemption filed in this case on August 11, 1980, with respect to monthly disability benefits in the total amount of $664.31 payable by Ciba-Geigy Corporation, the former employer of the debtor Hebra A. Berry.

The Debtors claim an exemption with respect to the monthly disability benefits although the right to receive the benefits has previously been assigned to the Objectors.

The Debtors have stated in their claim for property exemption at Schedule B(4) a claim for exemption stated as follows:

Hebra A. Berry receives a disability check monthly in the amount of $664.31 from Ciba-Geigy Corporation. One-third of this amount has been assigned to Dallas Ball for legal expenses, and the remaining two-thirds has been assigned to Republic National Bank for the repayment of a loan. Debtors wish to set aside these assignments.

It is claimed by the Debtors that the property is exempt under the provisions of 11 United States Code, Section 522(d)(10)(C) —"The debtor's right to receive—(C) a disability, illness, or unemployment benefit . . . ."—or 11 United States Code, Section 522(d)(11)(E)—"The debtor's right to receive, or property that is traceable to—a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

Republic National Bank claims a prior right to $442.90 of the monthly payment as security for the repayment of indebtedness owing to it by the debtor Hebra A. Berry as scheduled in the petition and schedules in bankruptcy. Dallas D. Ball, P.A. claims a prior vested interest in the remaining $221.41 of the monthly check as agreed attorney's fees for his services rendered in obtaining this particular property through

litigation on behalf of the debtor Hebra A. Berry.

At the hearing the Trustee appeared and took a neutral position as between the Debtors and the Objectors and abandoned any interest in the property upon the basis that it would be of no benefit to the estate in bankruptcy.

It is the position of the Objectors that by reason of the prior voluntary transfer of the monthly Ciba-Geigy checks that the debtor Hebra A. Berry has transferred and conveyed his "right to receive" the property and that therefore the property is not available to be set apart as exempt.

On September 29, 1979 Hebra A. Berry made a written assignment of $442.90 of each monthly check from Ciba-Geigy to Republic National Bank to secure repayment of its debt.

The monthly benefits concerned became payable as a result of the settlement of claims asserted by the debtor Hebra A. Berry against Ciba-Geigy Corporation in an action in the United States District Court for the District of South Carolina in which Dallas D. Ball, P.A., represented the said debtor in connection with the prosecution and settlement of said claims as his attorney.

A fee arrangement was made between Dallas D. Ball, P.A., and the debtor Hebra A. Berry by letter agreement dated March 23, 1978 for legal services rendered by Dallas D. Ball, P.A., in connection with the aforesaid matter with specific reference to the monthly disability benefits to be paid pursuant to the settlement. It was agreed on that date that Dallas D. Ball, P.A., would take as attorney's fees one-third (⅓) of the amount of each of said monthly benefit payments after the expiration of one year.

By virtue of the aforesaid fee arrangement, the right of the debtor Hebra A. Berry to receive one-third (⅓) of the amount of each of the aforesaid monthly benefits after the expiration of one year from said date was transferred to Dallas D. Ball, P.A., and thereby the beneficial ownership of the proceeds of said monthly benefits to the extent of one-third (⅓) thereof was vested in Dallas D. Ball, P.A.

Based thereon I find that the property was voluntarily transferred prior to bankruptcy by force of the assignments by Hebra A. Berry to Republic National Bank and Dallas D. Ball, P.A. and thus is neither property of the debtor nor property of the bankrupt estate to which an exemption could be claimed unless the transfer could be avoided.

In this posture, 11 United States Code, Section 522 provides as follows:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

By reference back to subsection (g)(1) the extent that the debtor might avoid a transfer of property is stated in subsection (g) as follows:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

It is apparent then that in order for the debtor to reach the property claimed to be

exempt, the transfer to be avoided must be an involuntary one or a transfer that could have been avoided under subsection (f)(2) of Section 522.

Subsection (f) of Section 522 provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

These transfers to the Objectors are neither involuntary transfers, nor judicial liens, nor nonpossessory, nonpurchase-money security interests in any items enumerated in subsection (f) of Section 522 and they are, consequently, transfers which the debtor cannot avoid for the purpose of exemption.

It is, therefore, ordered that the claim of exemption in the monthly checks of Ciba-Geigy Corporation be denied and that the assignments of the check proceeds to Republic National Bank in the amount of $442.90 monthly and Dallas D. Ball, P.A., in the amount of $221.41 monthly be, and they hereby are, found to be valid transfers which are not nullified by the action taken herein by the debtors.

In the event that the trustee shall receive or has received any Ciba-Geigy Corporation checks, he is directed to remit the proceeds thereof or the checks, properly endorsed, to the attorneys for the Objectors.

AND IT IS SO ORDERED.

## ORDER

### ON MOTION FOR NEW TRIAL

J. BRATTON, DAVIS, Bankruptcy Judge.

This matter is before the court on the motion of Hebra A. Berry and his wife, Sara K. Berry, the debtors herein, for a new trial.

On October 24, 1980, an order was issued on the objections of Dallas D. Ball, P.A., and Republic National Bank to exemptions claimed by the debtors in checks payable by Ciba-Geigy Corporation to the debtor, Hebra A. Berry. This court denied the exemptions. Now, the debtors move for a new trial.[1]

Hebra A. Berry (hereinafter Berry), a former employee of Ciba-Geigy Corporation, making a claim against his former employer for a disability pension, employed Dallas D. Ball, an attorney, to represent him. As compensation for his legal services, Ball was to receive one-third of the amount collected. The claim was settled with the result that each month Berry began receiving a $664.31 disability check from Ciba-Geigy Corporation, such payments to continue for the duration of his disability. One-third of each disability payment was assigned the remaining two-thirds of his disability payment to Republic National Bank (hereinafter the bank) as security for the repayment of a loan.[2]

---

1. The debtors were not represented by their attorney at the hearing held on October 21, 1980. That attorney, who previously represented the debtors in filing their petition in bankruptcy, informed this court by letter, dated October 15, 1980, that he had not been retained to represent the debtors for this hearing, and that he did not plan to attend. He is, however, representing the debtors on this motion for a new trial.

2. Berry's loan with Republic National Bank was primarily made for business purposes and is considered a business loan. Therefore, the

Subsequent to these assignments, the debtors filed a joint voluntary petition in bankruptcy stating therein a claim for property exemption under § 522 of the Bankruptcy Code, 11 U.S.C. § 522:

Hebra A. Berry receives a disability check monthly in the amount of $664.31 from Ciba-Geigy Corporation. One-third of this amount has been assigned to Dallas Ball for legal expenses, and the remaining two-thirds has been assigned to Republic National Bank for the repayment of a loan. Debtors wish to set aside these assignments.

The bank, claiming a prior right to $442.90 of the monthly payment as security for the repayment of an indebtedness owing to it by Berry, objected to the exemption sought by the debtors. Likewise, Ball objected, claiming a prior vested interest in the remaining $221.41 of each monthly check as agreed attorney's fee for legal services rendered in obtaining the disability settlement for Berry.

At the hearing on these objections, the trustee abandoned any interest in the property upon the basis that it, on account of the assignments, was of no benefit to the estate in bankruptcy.

The bank and Ball contend that Berry had deprived himself of his "right to receive" the property by reason of his voluntary assignments to them of the monthly Ciba-Geigy checks, therefore, the property was not his to set apart as exempt.

The court agreed, and so stated in its October 24, 1980 order. Tracking the provisions of § 522 of the Bankruptcy Code, the court found that the transfers to the objectors were neither involuntary transfers nor judicial liens, nor nonpossessory, nonpurchase-money security interests in any items enumerated in subsection (f) of § 522, and that they were transfers which the debtors could not avoid for the purpose of exemp-

tion. The transfers were found to be valid transfers which were not nullified by the debtors' claim for exemptions.

The debtors submitted their notice of a motion for a new trial on November 3, 1980. Because the facts necessary to the decision were before the court and undisputed, this motion has been considered as a motion for reconsideration.

## I

At the hearing on their motion, the debtors conceded that the assignment of a portion of the proceeds of the monthly Ciba-Geigy checks to Ball was an absolute assignment, not a security interest; therefore, those proceeds were not subject to their claim for exemption.

## II

The debtors, however, made no such concession regarding their claim of exemption relating to the assignment to the bank.

Although it is undisputed that the bank holds Berry's written assignment, dated September 29, 1979, of $442.90 per month from the Ciba-Geigy checks, and that no Uniform Commercial Code financing statement was recorded by the bank on, or after, September 29, 1979, specifically describing the assignment of the Ciba-Geigy check proceeds, and that the assignment to the bank was a collateral assignment intended as a security interest, the debtors argued that the assignment to the bank was intended to create a security interest in the disability pension in order to secure the repayment of a loan; and, since it was not accompanied by a recorded Uniform Commercial Code financing statement, was unperfected, could be avoided, and has been set apart as exempt property. The debtors contended that the avoidance powers of a trustee in bankruptcy are available to debtors in bankruptcy when the trustee does not

court in this case is making no determination on the effects of an assignment of disability payments given as security for a consumer loan. In a consumer loan situation, the court would need to consider the possible effect of other legislation which has been specifically

designed to provide protection for consumers in consumer transactions such as the South Carolina Consumer Protection Code found in Sections 37-1-101 to 37-9-101 of the Code of Laws of South Carolina (1976).

take action to avoid a transfer even though those powers are not specifically granted to such debtors by § 522 which relates to exempt property.

The debtors took the position that they are entitled to avoid the transfer in the same manner and in the same fashion as it provided to a trustee in bankruptcy under the provisions of § 544 of the Bankruptcy Code, 11 U.S.C. § 544, which states, in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists * * *.

A trustee is given, by § 544, the standing of a hypothetical simple contract judgment lien creditor. This statutory standing, with the powers of avoidance granted to a trustee, is inherently, and by definition, a creditor's standing, giving the trustee broad powers of avoidance to facilitate his collecting and distributing the debtor's assets in fulfilling his obligations to the court, the debtor, the creditors, and all others who have interests in the debtor's assets.

Section 36–9–302, Code of Laws of South Carolina (1976) requires a recorded financing statement in order to perfect a security interest in property.

Under § 36–9–301, Code of Laws of South Carolina (1976) "an unperfected security interest is subordinate to the rights of * * * a person who becomes a lien creditor without knowledge of the security interest and before it is perfected * * *." A "lien creditor" is defined therein as "a trustee in bankruptcy from the date of filing of the petition."

The court is asked to hold that the avoiding powers of the debtors under § 522 of the Bankruptcy Code coincide with the powers granted to the trustee. The debtors argued that the specific rights granted to debtors to avoid transfers under § 522 are not exclusive as to the debtors' powers of avoidance, but are supplemental to rights debtors have outside of that section.

A debtor is allowed to preserve and protect his interest in properties, otherwise subject to the bankrupt estate, when the trustee could have asserted his rights in this property, but has chosen not to. *See*, 3 *Collier on Bankruptcy* (15th ed. 1979) § 522.04 at page 522–15. Nevertheless, a debtor's powers of avoidance are limited.[3]

Subsections (f), (g) and (h) of § 522 place limitations on the powers of avoidance of the debtor which are not limitations on the powers of avoidance granted to the trustee by § 544. Subsection (g) gives the debtor the ability to exempt property that the trustee may recover under one of his avoiding powers where the property was involuntarily transferred from the debtor, and the debtor did not conceal the property.

If the trustee does not use his avoiding power to recover a transfer of property that would be exempt, the debtor may use it, and exempt the property; but the transfer must have been involuntary, and the property must not have been concealed by the debtor. *See*, subsection (h).

Subsection (f) protects the debtor's exemptions by permitting him to avoid a judicial lien on any property to the extent that

---

**3.** The reason for these limitations is that a debtor may have a greater incentive to use these powers abusively to promote his self interests *vis-a-vis* the interests of the creditors; whereas, the trustee, as a fiduciary, has a duty to represent, and preserve the interests of, several parties, including the creditors and the debtor. Limitations have, thus, been placed upon the debtor's powers of avoidance in areas where the potential risk of abuse is greatest. Because of such limitations, a debtor is prevented from using the trustee's powers of avoidance to benefit himself unjustly by concealing his property or arranging a preferential, or fraudulent, transfer.

the property could have been exempted in the absence of the lien, and he may, similarly, avoid a nonpurchase-money security interest in certain household and personal goods described in subsection (f).

If his assignment to the bank was voluntary and not a nonpossessory, nonpurchase-money security interest, Berry may not avoid the transfer and may not exempt this property because § 522 limits his power to avoid a transfer and claim an exemption in property when the transfer was not "involuntary" and not a "nonpossessory, nonpurchase-money security interest."

## CONCLUSIONS

■ 1. The Berrys cannot avoid their transfer by assignment to the bank for the purpose of claiming the property as exempt. The transfer was voluntary, and the Berrys have not shown herein that they have a nonpossessory, nonpurchase-money security interest in any property described in subsection (f) and § 522.

2. The fact that the bank has not filed a financial statement under the Uniform Commercial Code has no bearing because in this case the filing of a financial statement is not a prerequisite to the application of § 522.[4]  Section 522 is clear as to what may or may not be exempted; this transfer may not.

■ 3. As conceded by the debtors, their assignment to Ball of $221.41 monthly from the Ciba-Geigy Corporation checks is found to be an absolute assignment; not subject to exemption.

## ORDER

The trustee is directed to remit (a) the proceeds of any Ciba-Geigy Corporation checks to Dallas D. Ball, P.A., and Republic National Bank in their respective shares as recited herein, or (b) the checks, properly endorsed, to Dallas D. Ball, P.A., and Republic National Bank.

The motion for a new trial should be, and hereby is, denied.

AND IT IS SO ORDERED.

---

4. The Berrys' contention that it was necessary for the bank to perfect its interest in the assignment of the disability payments is misplaced. The trustee has determined that this transfer was either a voluntary transfer requiring no further perfection, as against the debtor, or, alternatively, that this transfer required no filing for perfection under Section 36–9–302 of the S.C. Code (1976).  In either case, Section 522 of the Bankruptcy Code could apply with no requirement of a filing statement.